UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WALTER DENNIS, a/k/a DENNIS
WALTER,

                    Petitioner,

    -vs-

MICHAEL CORCORAN, Superintendent
of Cayuga Correctional Facility,

                    Respondent.
_____

**No. 07-CV-6229(VEB)**

**DECISION AND ORDER**

**I.    Introduction**

Petitioner *pro se* Walter Dennis, a/k/a Dennis Walter (hereinafter, "Dennis" or "Petitioner"), has requested a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that his detention in state custody is unconstitutional. Dennis is incarcerated pursuant to a judgment of conviction entered against him in New York State Supreme Court (Erie County) (Buscaglia, Acting J.) on one count of robbery in the third degree.

Respondent has answered the petition, asserting that the claims are all without merit, and that some arguments do not present a federal constitutional question amenable to habeas review. Petitioner submitted a reply brief in response to respondent's answer.

The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

**II.    Factual Background and Procedural History**

Petitioner's conviction stems from his forcible robbery on November 8, 2002, of Timothy Fulks ("Fulks"), a/k/a "Tanielle", at Fulks' apartment. The two first met on a telephone chat-line

in the weeks before November 8, 2002. T.292-293.[1] Fulks testified that they knew each other for about a month and had a sexual relationship during that time. Fulks invited Petitioner to his apartment on the night of November 6, 2002. T. 294-295, 305. They had sex and Petitioner spent the night.

The next morning (November 7, 2002), before Fulks went to work, Petitioner accompanied him to the bank where Fulks cashed his paycheck. Thus, Petitioner knew Fulks had money, and this check-cashing incident was corroborated by the canceled pay check received in evidence. After Fulks left work that evening Petitioner again spent the night at Fulks' home. T.304-305.

The morning of Friday, November 8, 2002, Fulks was in the bathroom with the door locked preparing to take a shower. T.306. Fulks testified that Petitioner pried the door open and grabbed Fulks by the neck, and pointed a handgun to his head, demanding money from him. T309.[2] Fulks testified that he was afraid, and so he told Petitioner that his money (about $780 in cash) was in his jacket pocket in the guest room closet. T.311-313. Petitioner left the bathroom. On his way back from, presumably, the guest room, he passed Fulks, who was still in the bathroom, and apologized before leaving the apartment. T.313.

Fulks' friends testified that Petitioner was with Fulks the night before the robbery and that Fulks was extremely upset when he contacted them the next morning after Petitioner left the apartment. There was also testimony from that Petitioner telephoned Fulks numerous times

---

[1] Numbers preceded by "T." refer to pages of the trial transcript.

[2] The allegation that Petitioner pried open Fulks' bathroom door was corroborated by a photograph showing damage to the door. However, there was no gun recovered and the only evidence that there was a firearm used was Fulks' testimony. Fulks was inconsistent in his recounting of what the gun looked like or whether the gun was in Petitioner's right or left hand.

and made threats against him. In addition, Petitinoer offered to give back Fulks' money if he would drop the charges. When Fulks moved and obtained an unlisted phone number, Petitioner communicated with a mutual acquaintance, Calvin Sparks ("Sparks"), and asked Sparks to put him in touch with Fulks. Sparks refused to give Petitioner Fulks' new number. Sparks testified that Petitioner told him that he had taken Fulks' money but that he did not have a gun, and that he was not going to jail again on a gun charge, and that he should tell Fulks that if Fulks did not drop the charges, he would "fuck him up". Sparks testified that Petitioner told him that he should "look for his girl [i.e., Tanielle] on the news."

Petitioner fled from Buffalo shortly after the crime and traveled to Florida, where he was eventually apprehended. Petitioner waived extradition and returned to New York.

Petitioner was indicted on the charge of robbery in the first degree under New York Penal Law ("P.L.") § 160.15(4),[3] a class B felony. The trial court submitted the lesser-included offenses of third degree robbery and petit larceny to the jury. The jury rejected Fulks' testimony that Dennis had brandished a gun at the time of the incident, and convicted petitioner of the lesser-included offense of robbery in the third degree (P.L. § 160.05),[4] a class D felony–forcible robbery without a weapon. On June 23, 2004, Petitioner was sentenced as a second felony offender to three and one-half to seven years in prison.

On direct appeal, Petitioner's appellate counsel asserted claims of prosecutorial

---

[3] Under P.L. § 160.15(4), a person is "guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: . . . 4. [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." N.Y. PENAL LAW § 160.15(4).

[4] "A person is guilty of robbery in the third degree when he forcibly steals property." N.Y. PENAL LAW § 160.05.

misconduct resulting in the deprivation of his rights to a fair trial, to confront witnesses against him, due process and meaningful representation by the presentation of certain testimony and remarks by the prosecutor in summation; deprivation of his rights to due process and a fair trial by the court's denial of his challenge for cause of a prospective juror; and the conviction was not supported by legally sufficient evidence and was against the weight of the credible evidence. By an order dated November 17, 2006, the Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed Petitioner's conviction. *People v. Walter*, 34 A.D.3d 1259 (App. Div. 4th Dept. 2006). On January 12, 2007, the New York Court of Appeals denied leave to appeal. *People v. Walter*, 8 N.Y.3d 845 (N.Y. 2007).

While his direct appeal was pending, Petitioner moved the trial court to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") Section 440.10, claiming that the trial court lacked jurisdiction over him, that his conviction was obtained in violation of his constitutional rights, and that he was deprived of the effective assistance of trial counsel. On September 20, 2005, the trial court denied the motion, holding that since all of the issues presented were matters of record, there were properly resolved on Petitioner's pending direct appeal.

This timely habeas petition followed. For the reasons that follow, the petition is dismissed.

## III.    General Legal Principles

Federal habeas review is available for a State prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Supreme Court has established beyond debate that mere errors of State law are not

colorable grounds for Federal habeas relief. *See*, *e.g.*, *Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *Cupp v Naughten*, 414 U.S. 141, 146 (1970).

The Court's review of habeas petitions filed pursuant to 28 U.S.C. § 2254 is governed by standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214. *E.g.*, *Brisco v. Ercole*, 565 F.3d 80, 87 (2d Cir. 2009) (citing *Messiah v. Duncan*, 435 F.3d 186, 196-98 (2d Cir.2006)). The Second Circuit has summarized the main points of the AEDPA inquiry as follows:

> Under AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We must presume the state court's factual findings to be correct and may overturn those findings only if the petitioner offers "clear and convincing evidence" of their incorrectness. 28 U.S.C. § 2254(e)(1).

*Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir.2006) (quoted in *Brisco*, 565 F.3d at 87).

**IV.     Analysis of the Petition**

    **A.     Ground One: "Convictin [sic] obtained by Use of Evidence Obtained Pursuant to an Unlawful Arrest"**

The first ground upon which Dennis asserts he is being illegally detained is that "every" aspect of his rights under the Fifth and Fourteenth Amendments were violated during his criminal proceeding. Here, however, Dennis does not specify in what manner these violations allegedly occurred.

"On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."

*Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (citing *Machado v. Commanding Officer*, 860 F.2d 542, 544 (2d Cir.1988)). A conclusory assertion of a deprivation of constitutional rights does not state a viable claim for habeas corpus relief. *See Maddox v. Lord*, 818 F.2d 1058, 1061 (2d Cir. 1987). A "habeas petition may be denied 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous[.]'" *Angel v. Garvin*, No. 98 CIV 5384 LTS THK, 2001 WL 327150, at *8 (S.D.N.Y. Apr. 3, 2001) (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir.1970) and citing *Maddox v. Lord*, 818 F.2d 1058, 1061 (2d Cir.1987) (stating that a court can deny habeas petition without a hearing when claims are "merely vague, conclusory, or palpably incredible")*; Polanco v. United States*, Nos. 99 Civ. 5739, 94 Cr. 453(CSH), 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) ("[W]holesale and vague accusations are patently insufficient to meet the *Strickland* standard [of ineffective assistance]."); *Lamberti v. United States*, No. 95 Civ. 1557, 1998 WL 118172(PNL), at *2 (S.D.N.Y. Mar. 13, 1998) (finding that defendant's "vague and conclusory" allegations of counsel's failure to investigate or communicate, which neither specify the alleged failings nor show how different conduct would have changed the result, cannot sustain habeas petition); *Matura v. United States*, 875 F. Supp. 235, 237-238 (S.D.N.Y.1995) (rejecting "conclusory" allegation that counsel failed to conduct an adequate investigation, which § 2255 petitioner argued would have established his innocence)).

The only factual allegation presented is Dennis' complaint that he allegedly was "physically forced and taken to the Buffalo Police Department (after being held in custody 14 1/2 months) and was illegally, arrested, booked, and charged on Robbery 1st degree . . . ." Petition at

page 2 (Docket No. 1).[5] I agree with respondent's read on the claims–that Dennis simply is complaining that his arrest and booking occurred out of order since later in the Petition, Dennis states that he was not fingerprinted and photographed until after he was convicted at trial of the lesser included offense of robbery in the third degree. Dennis does not explain how this raises a Federal due process violation.

Later in his petition, Dennis asserts that he was never charged, fingerprinted, or photographed or booked pursuant to C.P.L. § 160.10, he could not legally be sentenced. First, Dennis' protestations aside, he has not established that his processing in the criminal justice system was out of compliance with New York State law. Second, even if he could demonstrate that C.P.L. § 160.10 was violated, he has not established his entitlement to a writ of habeas corpus, as habeas relief clearly does not lie for mere errors of state law. *E.g., Estelle v. McGuire*, 502 U.S. at 67-68.

To the extent that Petitioner is alleging a violation of his Fourth Amendment right to be free from unreasonable searches and seizures, such a claim is barred under the doctrine of *Stone v. Powell* from habeas review.

In sum, Dennis' allegations under Ground One do not state a viable federal constitutional question. He has merely asserted that his 5th and 14th amendment rights were violated, apparently by the very fact that he was arrested for robbing Fulks. Critically, however, Dennis has not demonstrated that a deprivation of his constitutional rights actually occurred. Ground One does not present a colorable constitutional claim and therefore is dismissed.

---

[5] The Petition as filed does not contain page numbers. For ease of reference, the Court has numbered the pages.

### B. Ground Two: Ineffective Assistance of Trial Counsel

As his second ground for relief, Dennis claims that trial counsel failed to object to "numerous instance of *Molineux*-type[6] conduct and irrelevant and prejudicial extradiction [sic] testimony." Petition at 2 (Docket No. 1). Specifically, Dennis asserts trial counsel should have objected to a reference by the prosecutor during opening statements that Petitioner used marijuana on one occasion; an accusation by the victim that Petitioner sold drugs to support himself; a reference in the prosecutor's opening statement to the victim's photographic-array identification of Petitioner; and testimony regarding phone calls Petitioner allegedly made to the victim, after the crime, in which Petitioner asked the victim to drop the charges; and evidence that Petitioner fled to Florida after the robbery.

The "clearly established Supreme Court precedent," 28 U.S.C. § 2254(d)(1), for evaluating an ineffective assistance claim in a habeas petition is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A habeas petitioner must demonstrate that the state court's rejection of his ineffective assistance of counsel claim amounted to an unreasonable application of the *Strickland* standard. In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland*, a defendant must satisfy a two-part test. First, the defendant must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. *Id.* at 688, 104 S.Ct. 2052. In other words, the defendant must show that his attorney's performance "fell below an objective standard of reasonableness." *Id.*

---

[6] In *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286 (N.Y. 1901), the New York Court of Appeals held that the prosecution is allowed to present evidence of a defendant's prior uncharged criminal or immoral acts for limited purposes, including proving motive, identity, and intent.

Second, the defendant must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052. To establish the "prejudice" prong of the *Strickland* test, the defendant must show that a "reasonable probability" exists that, but for counsel's unreasonable errors, the outcome of the trial would have been different. *Id.* at 694, 104 S.Ct. 2052. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate: The Supreme Court stated in *Strickland* that "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697, 104 S.Ct. 2052.

First, the Court turns to the "*Molineux*-type" evidence to which trial counsel allegedly did not object–the prosecutor's mention of Petitioner's alleged drug use and the complainant's testimony that Petitioner sold drugs to support himself. However, trial counsel objected to these statements but his objections initially were overruled by the trial court. Later, however, the trial court reversed its earlier ruling and instructed the jury to completely disregard both the prosecutor's statement and the complainant's testimony. *See* T.338. This particular complaint about trial counsel is factually baseless.

The second alleged error is trial counsel's withholding of an objection when the prosecutor, during opening statements, mentioned the victim's identification of Petitioner in a photo array. Trial counsel erred in not picking up on this improper reference and objecting to it. However, during a recess, the trial court took the issue up *sua sponte* and offered to give a curative instruction, but defense counsel declined to have the court give a curative instruction to the jury. T.329. Later, the prosecutor returned to this area of questioning, and defense counsel did make a timely objection when Fulks was asked whether he had identified Petitioner during the

grand jury proceedings. The trial court sustained this objection. T.362. Subsequently, trial counsel timely objected when the prosecutor mentioned in summation that Petitioner was identified during the grand jury proceedings. T.540. The trial court sustained this objection.

Overall, trial counsel did not incompetently handle the prosecutor's repeated attempts to introduce evidence of an out-of-court identification. In any event, Petitioner has not demonstrated that this information resulted in substantial, actual prejudice since it was beyond dispute that Petitioner and the complaining witness knew each other.

Dennis also complains that trial counsel should have prevent the introduction of Petitioner's alleged phone calls to the complainant after the crime. However, as respondent points out, this evidence was relevant to show consciousness of guilt because, in the phone calls, Petitioner offered to return the money and asked the complainant to drop the charges against him. T.353.

Dennis also faults trial counsel for failing to object to the admission of the telephone threats made by Dennis as prior bad acts. Like the phone calls in which Dennis offered to return the money in exchange for the complainant ceasing prosecution, the alleged threats were relevant and admissible to establish consciousness of guilt. Furthermore, the alleged threats were not prior crimes that would be subject to an *in limine* motion to preclude.

With regard to the evidence regarding Dennis' flight to, and waiver of extradition from, Florida, trial counsel moved *in limine* to exclude the evidence of extradition; however, that request was denied. Accordingly, the prosecution was able to introduce the indictment warrant and other documents reflecting the process used to find Petitioner as pieces in the chain of evidence of flight. An objection from defense counsel would have been futile since his pretrial

-10-

motion to preclude extradition evidence had been denied. As Petitioner points out, evidence of flight is of slight value and may indeed have an innocent explanation. Nevertheless, as a matter of state law, a defendant's flight following the alleged commission of a crime is relevant on the issue of consciousness of guilt. Thus, Petitioner's travel to Florida was admissible to show his consciousness of guilt, and trial counsel's objection would have been overruled.

The Court observes that trial counsel successfully moved to strike a comment by a witness to the effect that Petitioner was subject to pending criminal charges in Florida, and that this was factored into the Erie County District Attorney's Office's decision to extradite him. T.483. The trial court granted the request and issued a curative instruction. T.484.

The Court notes that trial counsel's strategy convinced the jury that Dennis should be convicted of a lesser charge which carried with it a substantially lower sentence. Petitioner has demonstrated neither that trial counsel performed in an objectively unreasonable manner nor that any of the purported errors prejudiced his right to a fair trial inasmuch that there is no reasonable probability or possibility that the outcome of the trial would have been more favorable but for trial counsel's alleged errors. Ground Two accordingly is dismissed.

### C. Ground Three: Prosecutorial Misconduct

As his third ground for relief, Petitioner asserts that the prosecutor committed various instances of misconduct throughout the trial. During her opening statement, the prosecutor phrased her argument as evidence; rather than telling the jury what she expected the evidence to be, she gave a narrative as if she already knew what the facts were. She improperly mentioned that the complainant had picked Petitioner out of a photographic array. She referred to an incident when Petitioner first met one of Fulks' friends, Joseph Hough ("Hough"), and tried to

smoke a marijuana joint in Hough's car. She also elicited testimony from the complainant about this incident as well as the opinion of the complainant that Petitioner sold drugs for a living. In addition, during the direct examination of one of the witnesses called to testify in regards to the search for Dennis after he fled to Florida, the prosecutor elicited testimony that Dennis had been arrested in Florida.

During summation, the prosecutor told the jury that the District Attorney's Office "had the obligation to protect future victims" and that Petitioner "should not get away with it." Dennis argues that a prosecutor is not permitted to make a "keep the streets safe" promise, in an attempt to turn the jurors' attention away from the sufficiency of the state's proof against the defendant, and toward their own and other citizens' physical safety. Also during summation, the prosecutor commented that Petitioner's presumption of innocence had been "shattered."

On direct appeal, the Fourth Department found that Petitioner failed to preserve by timely objection his contention that he was deprived of his right to a fair trial by these instances of prosecutorial misconduct. *People v. Walter*, 34 A.D.3d 1259, 1259, 823 N.Y.S.2d 796, 797 (citing, *inter alia*, N.Y. CRIM. PROC. LAW § 470.05(2)).[7] The Fourth Department went on to consider the merits of the claim, holding that "[i]n any event, '[p]ainstaking consideration of the record as a whole' compel[led] [it] to conclude that defendant was not deprived of a fair trial by the prosecutor's misconduct." *Id.* Although, according to the Fourth Department, the prosecutor "engaged in egregious conduct throughout the trial, including her summation, [the trial court] played a pivotal role in instructing the jury to disregard her prejudicial comments and the

---

[7] Respondent has not asserted the affirmative defense of procedural default in connection with this claim, and therefore has waived it.

testimony improperly elicited by her[.]" *Id.* (citing *People v. Galloway*, 54 N.Y.2d 396, 398, 399 (N.Y.)). Under the particular circumstances of this case, the Court concludes that the Fourth Department did not incorrectly apply Federal constitutional law in concluding that Dennis was not deprived of a fundamentally fair trial by the prosecutor's improper conduct, which this Court condemns in the strongest terms.

As an initial matter, it must be noted that a habeas court's scope of review as to claims of prosecutorial misconduct is quite limited. *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990). "The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted. *Id.*; *accord*, *e.g.*, *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir.1998). Because this question is presented in the context of a state prisoner's habeas corpus petition, the mere fact that the prosecutor's statement was erroneous or prejudicial is insufficient to grant the writ. *Donnelly v. DeChristoforo*, 416 U.S. at 647-48. In order to overturn a conviction, the habeas court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The Supreme Court has not enumerated all of the specific circumstances under which prosecutorial misconduct rises to the level of constitutional error. The case law indicates that the most condemnable comments or conduct are those that infringe upon a defendant's specific right, such as the privilege against compulsory self-incrimination or the right to counsel. *Darden v. Wainwright*, 477 U.S. at 182, 106 S.Ct. 2464; *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868; *accord*, *e.g.*, *Amirault v. Fair*, 968 F.2d 1404, 1406 (1st Cir.1992). When specific constitutional

rights are involved, the Supreme Court has stated, "special care [must be taken] to assure that prosecutorial conduct in no way impermissibly infringes them." *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868; *accord Darden*, 477 U.S. at 182, 106 S.Ct. 2464.

Another circumstance under which prosecutorial misconduct can rise to the level of a constitutional violation is where the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *DeChristoforo*, 416 U.S. at 643, 94 S.Ct. 1868; *accord Darden*, 477 U.S. at 182, 106 S.Ct. 2464. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned," however. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637; *accord, e.g. Amirault*, 968 F.2d at 1406. Reversal of a defendant's conviction is warranted only where " 'the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial.'" *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998) (quoting *United States v. Forlorma*, 94 F.3d 91, 93 (2d Cir. 1996) (quotations omitted))*, cert. denied*, 525 U.S. 1083, 119 S.Ct. 829, 142 L.Ed.2d 686 (1999)).

In determining whether a prosecutor's misstatements "so infected the trial with unfairness as to make the resulting conviction a denial of due process," the Second Circuit has instructed reviewing courts to consider various factors such as the severity of the misconduct, the sufficiency of any curative judicial instructions, and the likelihood that the misconduct affected the outcome of the case. *Agard v. Portuondo*, 117 F.3d 696, 713 (2d Cir.1997), *rev'd on other grounds*, 529 U.S. 61, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000); *see also Tankleff v. Senkowski*, 135 F.3d at 252; *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981) (*per curiam*)). The Court does not disagree with the Fourth Department that the improper conduct by the prosecutor,

Assistant District Attorney Holly P. Tucker, Esq., was egregious in light of its persistence and apparent deliberateness.

The second factor used to determine whether the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process" is the sufficiency of any curative measures. *Agard*, 117 F.3d at 713. Although objections from trial counsel were lacking, the trial judge took it upon himself to instruct the jury to disregard the prosecutor's improper remarks. *See United States v. Espinal*, 981 F.2d 664, 666 (2d Cir.1992) ("[T]he overriding factor [in this case] is the presence of curative measures each time they were necessary, though the certainty of Espinal's conviction absent the misconduct is also substantial."). In Dennis' case, the trial court took prompt and thorough curative measures to ameliorate the infirmities caused by the prosecutor's improper comments and elicitation of testimony. The trial court explicitly instructed the jury to disregard the improprieties and not consider them as part of its deliberations. The trial court also admonished the jury that the arguments of counsel were not evidence.

The final factor in the fairness analysis is a consideration of the likelihood that a conviction would have been secured absent prosecutor's misconduct. *Agard*, 117 F.3d at 713. In this case, the state's case for the indicted count–forcible robbery using a gun–was not strong: the only evidence that Petitioner used a gun came from the victim and on this subject, he was impeached with his inconsistencies. After reading the entire transcript, however, the Court concludes that the state's case against Dennis for forcible robbery without a weapon (the lesser included offense) was more than ample. *See United States v. Shareef*, 190 F.3d 71, 79 (2d Cir.1999) (holding, on direct review, that prosecutor's conduct did not cause constitutional

-15-

prejudice where the trial court "promptly admonished" the prosecutor and "the evidence against [defendant] was sufficiently strong"). Additional support for the conclusion that the misconduct did not affect the outcome of the case is that the jury did not convict Petitioner of the indicted charge, instead convicting him of the lesser included offense of third degree robbery. *See United States v. Young*, 470 U.S. 1, 18 n.15 (1985) ("The jury acquitted respondent of the most serious charge he faced, interstate transportation of stolen property. This reinforces our conclusion that the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly."). Thus, the jury did not buy into the prosecutor's arguments wholesale and was not swayed by her sharp tactics. Although the severity of the misconduct weighs in Petitioner's favor, the two other factors do not– the trial court gave appropriate and careful curative instructions and struck all improper testimony, and the jury's rejection of the prosecutor's principal argument supports a finding that the misconduct did not have "a substantial and injurious effect or influence in determining the jury's verdict.'" *Tankleff*, 135 F.3d at 252 (quoting *Bentley v. Scully*, 41 F.3d 818, 823 (2d Cir.1994)).

    **D.**    **Ground Four: Violation of C.P.L. § 180.80**

Finally, Dennis asserts that his indictment was unlawful since he had previously been released pursuant to C.P.L. § 180.80 ("Upon application of a defendant against whom a felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a

hearing thereon, the local criminal court must release him on his own recognizance" unless certain conditions are present). This ground raise a question of state statutory procedure only and implicates no federal constitutional rights. Accordingly, it is not cognizable on habeas review.

**V.      Conclusion**

For the reasons set forth above, Petitioner Dennis Walter's request for a writ of habeas corpus is denied and the petition is dismissed. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:      December 7, 2010
            Rochester, New York